EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ramón Vega Martínez<br><br>Peticionario | Certiorari<br><br>2016 TSPR 198<br><br>196 DPR \_\_\_\_ |

Número del Caso: CC-2016-575

Fecha: 14 de septiembre de 2016

Tribunal de Apelaciones:

Región Judicial de Aibonito, Panel VII

Abogado de la parte Peticionaria:

Lcdo. Carlos R. Padilla Montalvo

Oficina de la Procuradora General:

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Lcdo. Iván Rivera Labrador
Procurador General Auxiliar

Materia:  Resolución del Tribunal con Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                   CC-2016-575     Certiorari

Ramón Vega Martínez

    Peticionario

RESOLUCIÓN

San Juan, Puerto Rico, a 14 de septiembre de 2016.

Examinadas la *Moción en Solicitud de Auxilio de Jurisdicción* y la *Petición de Certiorari* presentadas en el caso de epígrafe, se provee no ha lugar a ambas.

Notifíquese **inmediatamente** por teléfono, fax o correo electrónico y por la vía ordinaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió un Voto Particular Disidente. El Juez Asociado señor Estrella Martínez está conforme con proveer no ha lugar a la moción en auxilio de jurisdicción, pero hubiese decretado no ha lugar en esta etapa al recurso de certiorari.

                        Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                     CC-2016-575      Certiorari

Ramón Vega Martínez

    Peticionario

Voto Particular Disidente emitido por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 14 de septiembre de 2016.

Por entender que correspondía paralizar los procedimientos en el Tribunal de Primera Instancia (TPI) <u>en estos momentos</u> y atender el recurso de *certiorari* en sus méritos, respetuosamente difiero del curso de acción que toma hoy este Tribunal. Así, declararía "con lugar" la *Moción en solicitud de auxilio de jurisdicción* para paralizar los procedimientos ante el TPI y expediría el recurso de *certiorari*.

I

El peticionario Ramón Vega Martínez (peticionario) nos presenta una solicitud de auxilio de jurisdicción para que paralicemos los

procedimientos ante el TPI y resolvamos su Petición de certiorari presentada el 15 de junio de 2016. En su recurso, el peticionario nos solicita que revoquemos una Resolución emitida por el Tribunal de Apelaciones el 13 de mayo de 2016[1] y, en consecuencia, se le permita a la Defensa realizar el interrogatorio de los agentes del orden público mediante preguntas sugestivas. Veamos los hechos del caso.

Allá para el 1 de octubre de 2013, el TPI expidió una orden de registro y allanamiento contra la propiedad del peticionario y así se diligenció la misma. Como consecuencia de lo allí incautado, se presentaron unas denuncias contra el peticionario, ello por infringir los Arts. 401 (intención de distribución) y 412 (posesión de parafernalia) de la Ley de Sustancias Controladas de Puerto Rico.[2] El TPI encontró causa probable para arresto y luego en vista preliminar halló causa probable para acusar por 2 cargos por violación al Art. 401 y 1 cargo por el Art. 412 del mencionado estatuto. Una vez el Ministerio Público presentó las acusaciones, el 3 de diciembre de 2014 el peticionario presentó una *Moción en solicitud de supresión de evidencia*, en la cual impugnó la declaración jurada que sirvió de base para la expedición de la orden de registro y allanamiento. En particular, el peticionario manifestó que "de la propia orden de

---

[1] Archivada en autos la copia de la notificación de la Resolución el 16 de mayo de 2016.

[2] Ley 4 de 23 junio de 1971, según enmendada, 24 LPRA secs. 2401 y 2411b.

allanamiento surge que los agentes del orden público no tenían evidencia suficiente para creer que el lugar allanado se estaba utilizando para guardar evidencia que resultara ser delictiva".[3]

Asimismo, en diciembre de 2014 el peticionario presentó una *Moción en solicitud de que se nos permita realizar el interrogatorio a los agentes del orden público mediante preguntas sugestivas*. En síntesis, planteó que parte de su prueba consistía en presentar como testigos al agente que solicitó y obtuvo la orden de allanamiento y al agente que diligenció la misma, pero éstos eran testigos identificados con la parte contraria puesto que eran los testigos anunciados por el Ministerio Público. El peticionario fundamentó su petición en que "[a] la Defensa se le dificultará injustificadamente el obtener admisiones de los testigos y/u obtener declaraciones sobre lo que realmente ocurrió"[4] debido a que -por lo general- los agentes del orden público son testigos identificados con la parte adversa (Ministerio Público). Puntualizó que esos agentes "están directamente relacionados con los hechos del caso de marras, los que tienen más interés en el mismo".[5]

Por su parte, el 21 de octubre de 2015 el Ministerio Público se opuso a la petición de supresión de evidencia. Luego de varias suspensiones por razones atribuidas tanto

---

[3] Apéndice de la Petición de *certiorari*, pág. 48.

[4] Apéndice de la Petición de *certiorari*, pág. 56.

[5] Íd., pág. 58.

al Ministerio Público como a la Defensa, el TPI señaló una vista evidenciaria de supresión de evidencia para el 11 de marzo de 2016.  Allí, previo a la juramentación de los 2 testigos (los agentes del orden público en cuestión), <u>la Defensa reiteró su petición de que se le permitiera interrogarlos mediante preguntas sugestivas, a lo que el Ministerio Público se opuso al plantear que esos testigos ni siquiera habían comenzado a declarar</u>.  En ese momento, el TPI declaró "no ha lugar" la solicitud de la Defensa por entender que era prematura.  Sin embargo, el TPI indicó que si los agentes contestaban con evasivas a la Defensa, entonces reconsideraría *motu proprio*. El peticionario solicitó que el dictamen del TPI se notificara por escrito para entonces recurrir ante el foro apelativo intermedio.  En lo pertinente, en la Resolución de 14 de marzo de 2016[6] el TPI expuso lo siguiente:

> En estas circunstancias, corresponde a la defensa someter a los agentes interventores a un interrogatorio directo.  Para que se le permita hacer preguntas sugestivas deberá demostrar, una vez comience el desfile de prueba testifical, una hostilidad o identificación real que justifique el interrogatorio sugestivo.
>
> . . . . . . . .
>
> En suma, en el caso de autos, al no haber siquiera comenzado el desfile de la prueba testimonial, la defensa no ha demostrado que los agentes del orden público se han mostrado evasivos o no responsivos. (Citas omitidas).[7]

Inconforme con la determinación del TPI, el peticionario presentó un recurso de *certiorari* ante el Tribunal de Apelaciones el 14 de abril de 2016 y la

---

[6] Archivada en autos la copia de la notificación de la Resolución el 15 de marzo de 2016.

[7] Apéndice de la Petición de *certiorari*, pág. 32.

Oficina de la Procuradora General presentó su escrito en cumplimiento de orden el 4 de mayo de 2016. Luego de evaluar los planteamientos de ambas partes, el foro apelativo intermedio emitió una Resolución[8] mediante la cual denegó la expedición del auto de *certiorari* al concluir que "no se [les] persuadió de que el foro de instancia haya cometido error alguno, que justifique [su] intervención en esta etapa de los procedimientos".[9]

Insatisfecho una vez más, el peticionario recurre ante esta Curia mediante una Petición de *certiorari* en la cual nos invita a interpretar por primera vez la Regla 607 de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, en particular en cuanto a establecer "cómo aplicará la misma y el efecto que debe tener en la litigación ante los foros del País; es decir, de establecer claramente las normas que los tribunales inferiores deben seguir al momento [de] interpretar [la mencionada regla]".[10] En síntesis, el peticionario aduce que este asunto no ha sido discutido a nivel local, pero sí en la esfera federal específicamente en relación con la Regla 611(c) de las Reglas Federales de Evidencia, Fed. R. Evid. 611(c).

En su Petición de *certiorari*, el peticionario enfatiza que tanto el TPI como el Tribunal de Apelaciones emitieron determinaciones erróneas, pues concluyeron que los testigos del caso tenían que ser hostiles primero para

---

[8] Véase nota al calce 1.

[9] Apéndice de la Petición de *certiorari*, pág. 7.

[10] Petición de *certiorari*, págs. 1-2.

luego permitirle a la Defensa ser sugestiva. Ante esto, el peticionario sugiere que "lo único que tenía que hacer el TPI era evaluar la consecuencia de tener ante sí un testigo identificado con la parte adversa y aplicar la Regla 607(d) de las Reglas de Evidencia".[11]

## II

En nuestro ordenamiento jurídico, la Regla 607 de las Reglas de Evidencia de Puerto Rico, *supra*, dispone lo concerniente al orden y modo de interrogatorio y presentación de la prueba. Específicamente, el inciso (d) expone lo relativo a las preguntas sugestivas:

> (d) No se podrá hacer una pregunta sugestiva a una persona testigo durante el interrogatorio directo o el redirecto, excepto cuando sea una pregunta introductoria o una parte llame a una o a un testigo hostil. También será excepción cuando se trate de una parte adversa, de una persona testigo identificada con la parte adversa, de una persona que -por su edad, pobre educación u otra condición- sea mentalmente deficiente o tenga dificultad de expresión, o de una persona que por pudor esté renuente a expresarse libremente. De igual modo, podrá considerarse excepción cuando los intereses de la justicia así lo requieran. Como norma general, podrán hacerse preguntas sugestivas durante el contrainterrogatorio o recontrainterrogatorio. Una pregunta sugestiva es aquella que sugiere al testigo la contestación que desea la parte que le interroga. (Énfasis suplido).

Por su parte, la Regla 611(c) de las Reglas Federales de Evidencia, *supra*, establece lo siguiente:

> (c) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions. (Énfasis suplido).

---

[11] Petición de *certiorari*, pág. 15.

De manera persuasiva, el peticionario nos presenta el caso U.S. v. Duncan, 712 F. Supp. 124, 126-127 (1988), en el cual se expresó lo siguiente en relación con la Regla 611(c) de las Reglas Federales de Evidencia, *supra*:

> This Court concludes that the use of leading questions in direct examination of a law enforcement official by the defense is philosophically supportable based on the reasoning of the Sixth Circuit in *Bryant,* that Fed.R.Evid. 611(c) is applicable in criminal trials, and that a law enforcement official or other investigating agent (regardless of whether he or she be a local, state or federal officer) may qualify as a witness identified with an adverse party in an action brought by the Government against criminal defendants, absent a positive showing by the Government that the witness is not hostile, biased or so identified with the adverse party that the presumption of hostility which is the cornerstone of Fed. R. Evid. 611(c) should not be indulged. Therefore, Defendants' Motion to Invoke Rule 611(c) in direct examination of police officers and government agents is granted.[12]

En relación con la Regla 607 (d) de las Reglas de Evidencia de Puerto Rico, *supra*, el profesor Ernesto L. Chiesa Aponte enumera las excepciones típicas a la norma general de no permitir preguntas sugestivas en el examen directo o re-directo de testigos. Éstas son: (1) preguntas introductorias; (2) preguntas a un testigo hostil; (3) preguntas a parte adversa; (4) preguntas a un testigo identificado con la parte adversa; (5) preguntas a

---

[12] En el mencionado caso de U.S. v. Duncan, 712 F. Supp. 124, 126 n. 2 (1988), se incluyó una nota al calce en la que se expone que:
> "Obviously, in a prosecution by the United States Government or one of its agencies, a federal government official or agent will automatically be both an adverse party (as an agent thereof) and a witness identified with an adverse party. Should the Government wish to contest the Defendant's use of Rule 611(c), local and state (as opposed to federal) law enforcement officials may or may not be ultimately deemed hostile or a witness identified with an adverse party, depending upon their degree of involvement with the operative facts of the incident(s) being presented and/or the prosecution itself."

un testigo que por razón de su edad, deficiencia mental, pobre expresión o por razón de pudor, no puede ser examinado eficazmente sin las preguntas sugestivas; y (6) cuando los intereses de la justicia así lo requiera.[13] En lo pertinente, el profesor Chiesa Aponte expone lo siguiente en cuanto a las preguntas a un testigo identificado con la parte adversa:

> Cuando el fiscal se ve obligado a llamar a un testigo identificado con el acusado, o el demandante llama a un testigo identificado con el demandado, o viceversa, lo mismo que cuando el abogado defensor llama a un testigo identificado con fiscalía, no hay razón para no permitir preguntas sugestivas. Estos son interrogatorios directos con efecto de un contra-interrogatorio, en el cual la pregunta es la regla. (Énfasis suplido).[14]

Sobre el asunto de permitir las preguntas sugestivas cuando existe alguna de las excepciones reconocidas por la Regla 607 (d) de las Reglas de Evidencia de Puerto Rico, *supra*, el profesor Rolando Emmanuelli Jiménez expresa que:

> La excepción para que se permita preguntas sugestivas durante el interrogatorio directo está basada en que si no se permitieran, sería muy difícil obtener información valiosa para la resolución de la controversia. Cuando se trata de un testigo hostil, de una parte adversa o de un testigo identificado por la parte adversa, su parcialidad hará que sea muy difícil que se conteste adecuadamente las preguntas. Esto ocurre porque el testigo puede añadir cosas que no se le han preguntado para fortalecer su declaración o porque puede responder en forma incompleta, evasiva, no responsiva o no adecuada. (Énfasis suplido).[15]

Al examinar la Regla 607 (d) de las Reglas de Evidencia de Puerto Rico, *supra*, surge que la excepción

---

[13] Véase E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Publicaciones JTS, 2009, págs. 187-188.

[14] Íd., pág. 188.

[15] R. Emmanuelli Jiménez, Prontuario de Derecho Probatorio puertorriqueño, 3ra ed., San Juan, Ediciones Situm, 2010, pág. 364.

que permite hacer preguntas sugestivas a un testigo hostil es separada e independiente de la excepción que permite realizar ese tipo de preguntas a un testigo identificado con la parte adversa. Es decir, estas excepciones son categorías separadas. Así lo discuten tanto el profesor Chiesa Aponte como el profesor Emmanuelli Jiménez.

Conforme al texto de la citada regla, es forzoso concluir que la figura del "testigo hostil" es distinta a "una persona testigo identificada con la parte adversa". Un testigo hostil es una persona que al ser llamada a declarar se tiene la expectativa que verterá un testimonio favorable a la parte que la llama, pero que, contrario a lo esperado, comienza a comportarse y a testificar no solo de manera desfavorable a esa parte, sino en clara oposición. De manera que un testigo hostil es aquel que sorpresivamente se comporta de manera distinta y en clara contravención e interés de la parte que lo ha llamado a testificar.[16] A *contrario sensu*, y en este contexto, un testigo identificado con la parte adversa es aquel de quien claramente se espera que esté inclinado a favorecer la teoría de la parte contraria de quien lo llama. Por lo tanto, requerir un *test* de hostilidad a este tipo de testigo hace superflua esta figura que es claramente refrendada en el texto de la Regla 607(d) de las Reglas de Evidencia de Puerto Rico, *supra*.

---

[16] Com. v. Lambert, No. 0423-1992, 1998 WL 558749, at 19 (Pa. Com. Pl. Aug. 24, 1998), aff'd, 765 A.2d 306 (Pa. Super. Ct. 2000), and aff'd, 769 A.2d 1205 (Pa. Super. Ct. 2000); Rodríguez v. Banco Cent. Corp., 990 F. 2d 7 (US Court of Appeals, 1st Circuit, 1993); Commonwealth v. Turza, 340 Pa. 128, 16 A.2d 401 (1940).

Por todo lo anterior, me parece claro que una vez se reconoce que hay un testigo identificado con la parte adversa, como en este caso serían los oficiales del orden público, el juez de instancia debe permitir que el abogado realice el interrogatorio mediante preguntas sugestivas. De esa forma, se es fiel al texto de la regla, se procura la búsqueda de la verdad y se respeta el propósito principal de las Reglas de Evidencia de Puerto Rico: garantizar una solución justa, rápida y económica a cualquier problema de derecho probatorio.[17]

Por entender que no es la dirección correcta el camino que hoy toma esta Curia al declarar "no ha lugar" tanto la solicitud de auxilio de jurisdicción como la Petición de *certiorari* presentadas por el peticionario, respetuosamente disiento.


                                        Erick V. Kolthoff Caraballo
                                        Juez Asociado

---

[17] Véase Regla 102 de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI.