UNITED STATES of America

v.

Francis P. SALEMME, et al.

Cr. No. 94–10287.

United States District Court,
D. Massachusetts.

June 26, 1997.

Corrected July 3, 1997.

Anthony M. Cardinale, Boston, MA, for Robert P. Deluca.

MaryEllen Kelleher, Law Office of Richard Egbert, Boston, MA, Anthony M. Cardinale, Boston, MA, for Francis P. Salemme, Sr.

Kenneth J. Fishman, Bailey, Fishman & Leonard, Boston, MA, Richard M. Egbert, Boston, MA, for Stephen J. Flemmi.

Sean E. Curran, Manchester, NH, for George Kaufman.

Michael C. Bourbeau, Boston, MA, Robert A. George, Boston, MA, Paul J. Haley, Law Office of Paul J. Haley, Hillsborough, NH, for James M. Martorano.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, Anthony M. Cardinale, Boston, MA, for John V. Martorano.

Fred M. Wyshak, Jr., U.S. Attorney's Office, Boston, MA, for U.S.

## ORDER

WOLF, District Judge.

For the reasons that have been discussed at the hearings on June 23, 24, and 25, 1997, and which will be described at the hearing on June 27, 1997, with regard to discovery concerning the evidentiary hearings that have been granted concerning defendants' motions to suppress the 1984–85 Drug Enforcement Administration ("DEA") and Federal Bureau of Investigation ("FBI") electronic surveillance targeting defendants Stephen Flemmi and James "Whitey" Bulger, among others, (M.B.D. No. 84–795), the October 29, 1989 FBI electronic surveillance of 34 Guild Street, Medford, Massachusetts, (M.B.D. No. 89–1015), and certain related matters including defendants' claims that Flemmi and Bulger were acting in cooperation with the FBI concerning at least some of the acts alleged to be crimes in the Fourth Superseding Indictment ("4SI") including the RICO, RICO conspiracy, and conspiracy to extort bookmakers and drug dealer, charges (4SI, Counts 1, 2, and 3), it is hereby ORDERED that:

1. In responding to this Order the attorneys for the government shall inform of this Order all federal, state, and local law enforcement agencies or entities that: (a) formally participated in the criminal investigation that resulted in this case; [1] (b) provided to the federal government information that was included in any application or affidavit concerning M.B.D. Nos. 84–795 and/or 89–1015, and/or provided information which was not referred to in any such affidavit or application but which is relevant to the questions now being litigated of whether the government made the "full and complete statement[s]" required by 18 U.S.C. § 2518(1)(c) and/or (11)(a)(ii); or (c) have evaluated or investigated any issues relevant to the pending proceedings.[2]

2. The government shall as soon as possible, and in any event by July 1, 1997, produce to counsel for defendant Stephen Flemmi:

a) All statements by Flemmi within the meaning of Fed.R.Crim.P. 16(a)(1)(A).[3]

---

1. Such agencies include, but may not be limited to, the FBI, including its Office of Professional Responsibility ("FBI–OPR"), the Drug Enforcement Administration, the Massachusetts State Police, the Quincy, Massachusetts Police Department, the Organized Crime Section of the Criminal Division of the Department of Justice, and the Offices of the United States Attorneys in Massachusetts and Rhode Island.

2. Such entities may include, but not be limited to, the FBI–OPR, the Office of the Inspector General of the Department of Justice, the Office of Professional Responsibility of the Department of Justice, and the Public Integrity Section of the Criminal Division of the Department of Justice.

3. With regard to all documents to be produced pursuant to this Order, the government may redact all file numbers, informant numbers, and other identifying information if it has a good

b) Any document or other record which is favorable to Flemmi and his codefendants because it tends to support Flemmi's claim that he was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the Fourth Superseding Indictment.

c) As agreed by the government, if Flemmi is not furnished every document in his FBI "informant" and "administrative" files in response to subparagraphs (a) and (b) hereinabove, the court shall be provided the remaining undisclosed documents for its *in camera* review in order to determine whether they should be disclosed to Flemmi.

3. Upon receiving the documents and records to be provided pursuant to ¶ 2 hereinabove, Flemmi and his counsel shall conduct a prompt review and inform the court if Flemmi objects to any such documents and records being disclosed to his codefendants. If Flemmi does not object, his counsel shall so inform the government, which shall then provide such documents and records to Flemmi's codefendants.

4. The government shall, by July 18, 1997, produce to counsel for each defendant:

a) Any additional documents or records relied upon by FBI Special Agent John Michael Callahan, Chief Division Counsel for the Boston Division of the FBI, in concluding that "Flemmi's control agents were obviously aware over the years from what Flemmi reported that he was engaged in illegal gambling and in LCN policymaking" and that such agents " 'at least tacitly authorized (his) participation." ' Affidavit of Paul E. Coffey, Esq., dated November 13, 1995, and filed *ex parte*, under seal, ¶ 7 n. 1 (evidently quoting a statement by Callahan).[4]

b) Any document or record that tends to support Flemmi's claim that Bulger was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the 4SI. *See* June 25, 1997 Affidavit of Stephen J. Flemmi. Such documents or records shall include, but not be limited to, those relied upon by Callahan if, as it appears, he also concluded that Bulger's participation in illegal gambling and LCN policymaking was at least tacitly approved by agents of the FBI.

c) Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Flemmi and/or Bulger. The documents and records covered by this subparagraph include, but are not limited to, materials indicating that: (i) required records were not prepared or main-

---

faith belief that disclosure of such information may compromise the confidentiality of its record-keeping system or the identity of informants, *provided*, however, that this process shall be conducted in a manner that does not result in the masking of relevant information, including, but not limited to, whether a redacted reference is to Flemmi, Bulger, or Angelo "Sonny" Mercurio, or whether the redacted portions of a document refer to one or more than one source of information.

4. The court is not ordering that Callahan's written report be furnished to defendants by July 18, 1997. The government is, however, encouraged to do so in order to facilitate the efficient progress of the evidentiary hearings now being scheduled concerning the motion to suppress MBD No. 84–795. The defendants have expressed their intention to call Callahan as a witness at those hearings. If he is called to testify, he will be deemed a government witness. *See* Fed.R.Crim.P. 12(i). After he has testified, the defendants will be entitled to his relevant written statements, including at least portions of the report quoted by Coffey. *Id.;* Advisory Committee Note to 1983 Amendment regarding Fed.

R.Crim.P. 12(i)("when a federal ... law enforcement officer has testified at a suppression hearing, the defendant will be entitled to any statement of the officer in the possession of the government and relating to the subject matter to which the witness has testified, without regard to whether the officer was in fact called by the government or the defendant"); *United States v. Duncan*, 712 F.Supp. 124, 130 (S.D.Ohio 1988). If, as it appears, any arguable work-product privilege has been waived, the defendants will obtain at least part of Callahan's report eventually and it is preferable that they receive it prior to his testimony. Indeed, even if the government believes that it may have a basis for protecting Callahan's report from compelled disclosure, it may decide that in the present posture of this case it is in the interest of the fair administration of justice to disclose it voluntarily. *See, e.g., Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (stating that the government's interest is "not that it shall win a case, but that justice shall be done").

tained;[5] (ii) required instructions were not given; (iii) unauthorized instructions were given; (iv) established procedures for seeking authorization or guidance concerning the participation of an informant in criminal activity were not followed; and/or (v) any required notification to appropriate authorities of unauthorized criminal activity by Flemmi and/or Bulger was not made.

d) The names of each agent of the government who dealt with Flemmi and/or Bulger in his capacity as an informant; or who had responsibility for evaluating his fitness to serve, or continue to serve, as an informant; or had responsibility for reviewing or approving his participation in any criminal activity.

e) Any document or record which tends show that the government did not make the full and complete statement concerning the necessity for electronic surveillance required by 18 U.S.C. § 2518(1)(c) in any application or affidavit relating to M.B.D. 84–795.

f) Any document or record that tends to contradict any representation in any application or affidavit relating to M.B.D. 84–795 including, but not limited to, representations that: (i) Bulger and Flemmi were illegally participating in gambling offenses, see, e.g., December 24, 1984 Affidavit of Steven Boeri ("Boeri Aff.") at 3–4, Bate Stamp ("BS") 14579–80; (ii) Bulger and Flemmi were illegally participating in narcotics offenses, id. at 2–3, BS 14578; (iii) electronic surveillance was necessary to determine or prove the illegal activities of Bulger and Flemmi, id. at 100–01, BS 14677–78; and (iv) electronic surveillance was necessary to determine or

prove the illegal activities of alleged associates of Bulger and Flemmi, id.

5. With regard to the electronic surveillance of 34 Guild Street, Medford, Massachusetts on October 29, 1989, M.B.D. No. 89–1015, the government shall, by July 18, 1997, produce to counsel for each defendant:

a) Any document or record reflecting information received from Mercurio which is relevant to whether or not the government, in applying for the roving warrant, made the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii). Such documents and records include, but are not be limited to, materials relating to when Mercurio discussed the possible LCN induction ceremony with agents of the government, Mercurio's communications concerning the location of that event, and Mercurio's statements, if any, concerning his willingness to testify if necessary and/or to record any conversations consensually.[6]

b) Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Mercurio. See ¶ 4(c) hereinabove.[7]

c) Any other document or record helpful to the defendants because it tends to show that the government did not make the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii), as those requirements have been interpreted by this court. See United States v. Ferrara, 771 F.Supp.

---

5. If government agents failed to follow required or customary procedures to record accurately communications with informants relevant to this case, the court will consider the possibility of ordering the government, in the discharge of its Brady obligations, to conduct appropriate interviews as part of its "duty to learn of any favorable evidence known to others acting on the government's behalf." Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995); see also, United States v. Hanna, 55 F.3d 1456, 1460–61 (9th Cir.1995)(holding that government, as part of its duty under Kyles, was required in particular circumstances to inquire about oral, unrecorded statements between police officers); United States v. Van Nuys, 707 F.Supp. 465, 470 (D.Colo.1989)(holding that de-

liberate failure to prepare DEA 6 reports of witness interviews constituted a violation of the duty to preserve evidence that deprived defendant of right to a fair trial).

6. On June 25, 1997 the court understood the government to represent that it was willing to provide discovery relevant to the October 29, 1989 electronic surveillance concerning Mercurio comparable to that being ordered more generally concerning Bulger and Flemmi.

7. Such information is, among other things, relevant and material concerning the credibility of any testimony Mercurio may provide.

1266 (D.Mass.1991); May 22, 1997 Memorandum and Order Unsealed and Partially Undredacted June 6, 1997 ("May 22, 1997 Memorandum and Order") at 9–11; June 19, 1997 Memorandum and Order at 10 n. 5. Such documents and records include, but are not limited to, materials containing information which tends to show that the government was told, or learned, the address of the planned LCN induction ceremony prior to the afternoon of October 27, 1989, and/or that any agent of the government was motivated to seek a roving warrant, in whole or in part, by a desire to protect the identity of one or more informants.[8]

d) Any document or record that is favorable to the defendants because it tends to contradict any of this court's findings of fact and/or conclusions of law in *United States v. Ferrara, supra.*

e) Any document or record relating to the destruction of any relevant document or record, including, but not limited to, the FD–256 forms from 1989 referred to in Exhibit 1C to the April 9, 1997 Affidavit of Paul E. Coffey, Esq.

6. The government shall, by July 18, 1997, inform the court whether there are issues similar to those addressed in the May 22, 1997 Memorandum and Order which exist with regard to other applications for electronic surveillance relating to this case, as to which at least one defendant has standing, in addition to the issue discussed in the government's June 17, 1997 submission regarding the identification of Burton Krantz as a confidential source as well as a named target in the applications for electronic surveillance of Joseph Yerardi's telephones. Such issues include, but are not limited to, the naming in an application for electronic surveillance of an informant as a target or person expected to be intercepted, and/or the failure to refer to an informant with relevant information in an application either as a specific confidential source ("CS") or generally as among those, if any, represented to be unwilling to testify.

7. The government's duty to seek relevant materials and to make disclosures pursuant to this Order is a continuing duty. *See* Fed.R.Crim.P. 16(c). If the government at any time discovers or develops documents or records subject to this Order that have not been produced, they shall be produced forthwith.[9]

8. If the government is uncertain whether any document or record must be produced pursuant to this Order, or otherwise wishes to have the guidance of the court regarding a possible disclosure, it may submit the document or record *ex parte* and under seal, for the court's consideration *in camera.*

9. All documents and records produced pursuant to this Order, or subsequently in discovery, are subject to the following restrictions. *See* Fed.R.Crim.P. 16(d); *Alderman v. United States,* 394 U.S. 165, 184, 89 S.Ct. 961, 972, 22 L.Ed.2d 176 (1969); *United States v. United States Dist. Court for the Eastern Dist. of Michigan,* 407 U.S. 297, 324, 92 S.Ct. 2125, 2140, 32 L.Ed.2d 752 (1972); *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir.1995); *Morgan v. United States,* 923 F.2d 195, 197 n. 2 (D.C.Cir.1991).

a) The documents, records, and information they contain shall be disclosed only to: (1) counsel for the government and the individuals necessary to assist them in this case; and (ii) counsel for each defendant, the defendants, and the individuals necessary to assist their counsel in this case. Each of the

---

**8.** If responding to this provision of this Order would require the government to disclose an informant other than Mercurio and the government wishes to have the court conduct a *Roviaro* analysis before determining whether such a disclosure should be required, it may submit all relevant information to the court, *ex parte* and under seal, for the court's consideration *in camera. See United States v. Higgins,* 995 F.2d 1, 3 (1st Cir.1993). However, in essence, the court intends, and hereby ORDERS, that it be informed if Mercurio was not the sole source, other than Vincent Federico's furlough request, of the government's information concerning the location of the possible LCN induction ceremony.

**9.** In the context of this case it is foreseeable that relevant documents and records may be generated by related investigations or proceedings, including any FBI–OPR investigation concerning matters relating to this case, and/or any criminal investigation of the charges made in the June 25, 1997 Flemmi Affidavit. Thus, careful attention to this continuing duty is particularly important in this case.

foregoing is an "Authorized Individual" for the purpose of this Order.

b) The documents and information they contain shall be used by each Authorized Individual solely for the purpose of litigating matters in this case. Each Authorized Individual shall not divulge the documents and information they contain to anyone who is not an Authorized Individual.

c) Submissions to the court referring to documents, records, or information received pursuant to this Order, or in subsequent discovery, shall be filed (i) at least temporarily under seal, and (ii) with a proposed redacted version to be made, upon order of the court, part of the public record if the complete document is not unsealed.

d) Each Authorized Individual shall file, under seal, a statement under oath representing that he or she has read ¶ 9 of this Order and recognizes that a willful violation of it may be deemed a civil and/or criminal contempt.

10. All relevant documents and records, including notes, in the possession, custody, or control of any agent, attorney or agency of the government subject to this Order shall be preserved.

11. The defendants shall, by July 18, 1997, file a list of the witnesses they propose to call at the forthcoming evidentiary hearings and describe briefly the relevance of the proposed witnesses' testimony. The government shall, by July 25, 1997, also do so.

12. Counsel for the parties shall confer and, by July 29, 1997, report to the court, jointly if possible but individually if necessary, concerning any issues requiring resolution before evidentiary hearings commence, beginning with the 1984–85 electronic surveillance and related matters regarding Flemmi and Bulger.