**UNITED STATES of America,
Appellant,**

v.

**Melvin ASHLEY, Defendant, Appellee.**

No. 88–1834.

United States Court of Appeals,
First Circuit.

Heard Feb. 27, 1989.
Decided June 13, 1989.

---

Edwin J. Gale, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for, U.S.

Robert D. Watt, Jr., Providence, R.I., by appointment of the Court, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

Defendant/appellee Melvin Ashley ("Ashley") and others were charged with various offenses, including conspiracy to possess and distribute cocaine. During the course of the prior investigation, Judge Francis J. Boyle authorized the interception of conversations over a telephone utilized by co-defendant Edward A. D'Alessio ("D'Alessio"). Judge Boyle approved the wiretap based upon an extensive affidavit by Daniel J. McCarthy ("McCarthy"), a 22–year veteran Special Agent of the Drug Enforcement Administration ("DEA").[1] In the course of trial, Ashley's motion to suppress the tape recordings and any fruits of the electronic surveillance was granted by Judge Raymond J. Pettine.[2] The trial court ruled that the government affidavit failed to demonstrate that investigative means other than wiretapping would be inadequate, as required by sections 2518(1)(c) and (3)(c) of Title 18 of the United States Code. The government appeals the district court's grant of Ashley's motion to suppress the wiretap evidence. It contends that the trial court erred by finding that the affidavit was insufficient to uphold the wiretap order issued by Judge Boyle. For the reasons set forth below, we reverse the trial court's suppression order.

---

* Of the District of Puerto Rico, sitting by designation.

1. See Joint Appendix, Affidavit, at 20–41.

2. Ashley's motion to suppress was granted by Judge Pettine during a hearing held on June 29, 1988. The text of the subsequent written order and the relevant portion of the hearing transcript are set forth in the Joint Appendix at 1–15.

### I

■ We begin by examining the standards for issuing a wiretap in the first instance. The procedure for interception of wire communications is set forth under chapter 119 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[3] Among the statutory hurdles that the government must clear in order to secure authorization for a wiretap are sections 2518(1)(c) and (3)(c) which require a showing that other investigative means would not suffice. Basically, the government is required to "make a reasonable, good faith effort to run the gamut of normal investigative procedure before resorting to means so intrusive as electronic surveillance of telephone calls." *United States v. Hoffman*, 832 F.2d 1299, 1306–07 (1st Cir.1987). Section 2518(1)(c) states the requirement that a wiretap application must include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c). Moreover, section 2518(3)(c) of the same statute mandates that the issuing judge determine, based on the facts submitted by the applicant, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). *See United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). The issuing judge must *independently* conclude, based upon the affidavit, that the antecedent efforts were adequate in order to comply with section 2518(3)(c). *See United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).

■ As the Supreme Court has stated, sections 2518(1)(c) and 2518(3)(c) are "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suf-

fice to expose the crime." *United States v. Kahn*, 415 U.S. at 153 n. 12, 94 S.Ct. at 983 n. 12; *accord, United States v. Abou–Saada*, 785 F.2d 1, 11 (1st Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986). Prior to granting authorization for a wiretap, the issuing court "must satisfy itself that the government has used normal techniques but it has encountered difficulties in penetrating a criminal enterprise or in gathering evidence—to the point where (given the statutory preference for less intrusive techniques) wiretapping becomes reasonable." *United States v. Abou–Saada*, 785 F.2d at 11. Accordingly, the government is not required to show that other methods have been wholly unsuccessful. *Id.* Nor is the government forced to run outlandish risks or to exhaust every conceivable alternative before requesting authorization for electronic surveillance. *United States v. Hoffman*, 832 F.2d at 1306.

■ However, bare conclusory statements that normal techniques would be unproductive, based solely on an affiant's prior experience, do not comply with the requirements of section 2518(1)(c). *See id.; United States v. DiMuro*, 540 F.2d 503, 510–11 (1st Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Nevertheless, the issuing court may properly take into account affirmations which are founded in part upon the experience of specially trained agents. *See United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir.1977) (prior experience of agents relevant in determining whether other investigative procedures unlikely to succeed), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977); *United States v. Rodriguez*, 606 F.Supp. 1363, 1368 (D.Mass. 1985) (same); *cf., United States v. Hoffman*, 832 F.2d at 1306 (court may weigh experience of agents in balance in assessing probable cause for issuance of wiretap). The authorizing court is also not precluded from referring to the nature of the alleged crimes in its evaluation of the sufficiency of the affidavit as to the required showing

---

3. *See* Chapter 119—Wire and Electronic Communications Interception and Interception of

Oral Communications, at 18 U.S.C. §§ 2510– 2521 (1982 & 1986 Amendments).

of antecedent efforts. *See United States v. Scibelli*, 549 F.2d at 227. Furthermore, in reviewing the adequacy of prior investigatory methods, the craftiness and wariness of the intended targets is a significant factor to be considered by the court in its determination of whether to authorize electronic surveillance. *See id.* The government affidavit is adequate if it satisfies the burden that it indicate a "reasonable likelihood" that alternative techniques would fail to expose the crime. *United States v. Abou–Saada*, 785 F.2d at 12.

## II

 It is clear that the issuing court and any later reviewing courts must test the government's recital of antecedent investigatory methods in a "practical and commonsense" manner. *See United States v. Hoffman*, 832 F.2d at 1307; *United States v. Scibelli*, 549 F.2d at 226–27; *United States v. Rodriguez*, 606 F.Supp. at 1368 (same standard for district court facing suppression motion); S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, at 2190. The term "reviewing" court has more than one meaning, depending upon the particular procedural setting. Once an authorization for a wiretap has been issued, that determination may be reviewed by a district court in the context of a suppression motion, and then again by an appellate court. This case requires us to discuss the standards to be employed by the reviewing courts in each instance.

 The *issuing* judge has the initial role of "reviewing" the wiretap application. As we discussed above, the issuing judge has an independent obligation under section 2518(3)(c) to make a determination that the affidavit illustrates sufficient antecedent investigatory efforts. *See United States v. Scibelli*, 549 F.2d at 226. We proceed to clarify the role of the trial judge to "review" the sufficiency of the wiretap affidavit under 2518(1)(c) and the issuing judge's determination of sufficiency pursuant to 2518(3)(c). In the instant case, the district judge who reviewed the wiretap application for purposes of Ashley's suppression motion at trial was not the same judge who authorized the wiretap. In *Scibelli*, the same district judge who initially authorized the wiretap served as the trial judge and was thus also responsible for the decision as to possible suppression of the evidence obtained as a result of the electronic surveillance. *See id.* In that case when we stated that the "district judge reviewing the application [has] an independent obligation" to determine if the affidavit complies with section 2518(3)(c), we were referring to the district court in its initial function as the authorizing or issuing court. *Id.* The fact that section 2518(3)(c) refers to the issuing judge is plain from reading section 2518(3) in its entirety. Accordingly, a district judge reviewing the sufficiency of a wiretap application in the context of a suppression motion is not bound by the "independent" review standard set forth in section 2518(3)(c).

 It remains for us to limn the standard applicable at the district court level in the context of a suppression motion based on the claimed facial inadequacy of the affidavit's rendition of antecedent efforts. As we stated above, the issuing court looks to the facts as submitted in the affidavit to determine whether the government has fulfilled its burden to illustrate that other investigative procedures would be inadequate. *See* 18 U.S.C. § 2518(3)(c). We point out that in the instant case, neither the trial court nor this court is faced with any allegations of factual inadequacies or misrepresentations in the government's wiretap application. *Compare, United States v. Cole*, 807 F.2d 262, 267–68 (1st Cir.1986) (district court holds hearing to determine whether factual omissions from wiretap application are material pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). It follows that in consideration of a suppression motion which challenges the issuing court's finding that the government's affidavit facially satisfied the statutory requirements, the reviewing court must also take the facts as stated in

the affidavit. Under these circumstances, both the district court considering such a suppression motion and the appellate court must determine the sufficiency of the affidavit on its face. *See United States v. Abou–Saada,* 785 F.2d at 13 (validity of wiretap order depends upon facial sufficiency of affidavit absent allegation that affiant lied).

■■■ We have previously defined that the "appeals court role is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli,* 549 F.2d at 226, *accord, United States v. Cole,* 807 F.2d at 268; *United States v. Bynum,* 763 F.2d 474, 476 (1st Cir.1985). Other courts have stated that the affidavit passes appellate review by showing only a "factual predicate" to support the issuing court's finding that normal investigative procedures were unlikely to be successful. *See, e.g., United States v. Zambrana,* 841 F.2d 1320, 1330 (7th Cir. 1988) (according deference to issuing judge's determination that wiretaps necessary but *de novo* review as to whether affidavit contained full and complete statement in compliance with 2518(1)(c)); *United States v. Landmesser,* 553 F.2d at 20; *United States v. Armocida,* 515 F.2d 29, 38 (3rd Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). The sufficiency of the affidavit is to be upheld where the appellate court determines that the issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed. *United States v. Abou–Saada,* 785 F.2d at 13; *United States v. Armocida,* 515 F.2d at 38. We find that this is the standard that must be employed by the district court whenever the court is "reviewing" the prior district court authorization of a wiretap application in the course of a suppression motion challenging the facial sufficiency of the affidavit. *See United States v. Rodriguez,* 606 F.Supp. at 1368; *United States v. Harvey,* 560 F.Supp. 1040, 1055–57 (S.D.Fla.1982), *aff'd sub nom., United States v. Van Horn,* 789

F.2d 1492 (11th Cir.), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). In reviewing Judge Boyle's determination, both the district court and this court must decide by looking to the affidavit on its face, whether the facts are reasonably adequate to support the issuing judge's implicit determination that other procedures reasonably appear to be unlikely to succeed.

### III

■■■ With these standards in mind, we have reviewed the wiretap application at issue in this case and find that the affidavit complies with the statutory requirements. We refer to the relevant material set out in the affidavit without reiterating the entire factual content in the text of this opinion. In the lengthy affidavit, DEA agent McCarthy described the investigative procedures which had been utilized and set forth why further efforts appeared unlikely to succeed in gathering the necessary evidence to prosecute the supplier(s) of codefendant D'Alessio. The affidavit details the investigation of August 1987 through January 1988 which involved various purchases of controlled substances by two undercover agents from codefendant D'Alessio. These purchases and other rendezvous were monitored by physical surveillance. Numerous telephone conversations made between codefendant D'Alessio and the undercover agents were recorded, and pen registers were employed.

In the affidavit, Agent McCarthy set forth his belief that interceptions of wire communications would illuminate details of the cocaine conspiracy including the roles of the participants and the financial backing. The application stated that electronic surveillance was requested because normal investigative procedures had been tried and failed or were unlikely to succeed in gathering the necessary evidence to sustain prosecution of the supplier(s) of D'Alessio. McCarthy stated that the undercover informant utilized in the investigation was not in a position to discover the target sources. The government was not willing to offer grants of immunity and any use of a grand jury investigation was deemed fruitless.

Further undercover infiltration was also rejected as D'Alessio had advised the agents that his suppliers would not meet with them. The affidavit describes a number of incidents which illustrate the wariness of the targets and potential danger for the undercover agents. For example, D'Alessio on two occasions warned one of the agents that he would kill him or harm his family if he discovered that the agent was in fact a law enforcement officer. On another occasion, D'Alessio checked the agent to determine if he was wearing a tape recorder. D'Alessio again accused the agents of being "feds" during another meeting and a companion of D'Alessio was observed noting the license plate number of the agents' vehicle. In November 1987, D'Alessio stated that he was afraid of a wiretap on his home telephone and provided the undercover agent with a different telephone number to reach him regarding the narcotics transactions.

In reference to Ashley's suppression motion, the trial court correctly found that the purpose of the requested wiretap was to determine the drug supplier(s) of D'Alessio. The district judge then reviewed McCarthy's affidavit and ruled that the statement of other investigative methods was inadequate to permit a court finding that less intrusive means would be fruitless. The trial court interpreted that the issuing judge may only permit approval of a wiretap after observing the application to contain a statement concerning why physical surveillance would either yield nothing, provide only cumulative evidence, or be impracticable. Judge Pettine determined that McCarthy's affidavit was deficient because it was conclusory in such regard and contained no description of covert physical surveillance of D'Alessio for the purpose of identification of his suppliers. The trial court thus suppressed the evidence and concluded as follows; "[w]here, however, as here, the Government has neglected to attempt the most obvious and simple method, physical surveillance, and has failed to account for this neglect, I simply cannot conclude that reasonable efforts were

made to secure the information by means other than wiretapping." [4] Thus, although McCarthy's affidavit did contain descriptions of physical surveillance, the trial court held that such was inadequate because the described surveillance was not specifically directed to the aim of identifying D'Alessio's suppliers.

While understanding the district court's concerns, we cannot affirm the overly restrictive interpretation of First Circuit case law applied by the district court. The fact that the government affidavit did not exhaustively explain its failure to attempt **additional** physical surveillance specifically directed at determining D'Alessio's drug sources is not fatal to the sufficiency of the wiretap application. We review the affidavit in the requisite practical and common-sense manner and apply the standards discussed above. In light of the investigatory efforts set forth by Agent McCarthy in the application, we find that the affidavit made a satisfactory showing of antecedent efforts and sufficiently illustrated why additional endeavors would be unlikely to succeed or be too dangerous. McCarthy's affidavit provides the proper assurance that the government was not seeking a wiretap where other investigative techniques would suffice. *See United States v. Kahn*, 415 U.S. at 153 n. 12, 94 S.Ct. at 983 n. 12; *United States v. Hoffman*, 832 F.2d at 1307. The affidavit is adequate to comply with the government's burden to show a "reasonable likelihood" that alternative investigatory techniques would fail to expose D'Alessio's drug source. *See United States v. Abou–Saada*, 785 F.2d at 12. Viewing the affidavit as a whole, it clearly illustrates facts which were minimally adequate to support Judge Boyle's issuance of the wiretap order. *See United States v. Cole*, 807 F.2d at 268; *United States v. Scibelli*, 549 F.2d at 226–27. Based on said affidavit, the issuing judge could reasonably have concluded that normal investigative procedures reasonably appeared to be unlikely to succeed. *See United States v. Abou–Saada*, 785 F.2d at 13.

**4.** Joint Appendix, at 15.

As the electronic interceptions were duly authorized, we decide that the district judge erred in suppressing the evidence resulting from the wiretap. *Cf. United States v. Hoffman*, 832 F.2d at 1306–09 (district court therein did not commit error in denial of suppression motion).

### IV

The district court's order suppressing the evidence and fruits obtained by electronic surveillance is *reversed*. The case is *remanded* to the district court for further proceedings consistent with this opinion.